UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) )  ) |
| v. | ) ) Criminal Action No. 16-cr-224 (RMC) |
| GADDY LITTLE (1), | ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION ON DETENTION

Defendant Gaddy Little faces drug and gun charges in this Court. *See* Indictment [Dkt. 1]. He was arrested on Wednesday, January 11, 2017, and appeared for his initial hearing before Magistrate Judge Deborah Robinson on Thursday, January 12, 2017. At that time, the government orally moved to have Mr. Little held without bond, which motion the Judge temporarily granted, pending a detention hearing to be held on Friday, January 13, 2017. At the conclusion of the detention hearing, Magistrate Judge Robinson ordered Mr. Little released on the condition of home confinement with limited exceptions and without location monitoring. The Government filed a motion for an emergency stay and for review and appeal of the release order, Mot. for Emergency Stay [Dkt. 6], on Friday afternoon, which this Court granted. *See* 1/13/17 Minute Order. A hearing on bond review was held at the soonest possible date (Wednesday, January 18, 2017), at which time this Court ordered Mr. Little's detention pending trial pursuant to 18 U.S.C. § 3142. Section 3142(e) allows a court to hold a defendant pending trial, but a judicial officer entering a detention order must "include written findings of fact and a written statement of the reasons for the detention." 18 U.S.C. § 3142(i)(1). This memorandum opinion makes those findings and explains the reasons for Mr. Little's detention.

## I.  BACKGROUND

During the hearing on January 18, 2017, the Government presented an oral proffer that summarized and expanded on its arguments to detain Mr. Little, as previously presented in its written Motion for Emergency Stay.  With the exception of the quantity of PCP charged, these facts were not seriously disputed by Mr. Little:

1. Mr. Little was indicted on December 8, 2016, with one count of Possession with the Intent to Distribute Phencyclidine (PCP) in violation of 21 U.S.C. §§ 844(a)(1) and 841(b)(1)(B)(iv); one count of Possession with the Intent to Distribute Cocaine Base, also known as "crack," in violation of 21 U.S.C. §§ 844(a)(1) and 841(b)(1)(C); one count of Unlawful Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1); and one count of Possessing a Firearm During or in Furtherance of a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c).

2. As indicated above, Mr. Little was not arrested for the indicted crimes until January 11, 2017.

3. Three months earlier, on October 11, 2016, at approximately 1:17 p.m., Mr. Little was driving on Suitland Parkway in Maryland with his co-defendant Tiffany Mack and their two children, a 7-month-old and a three-year-old.  Mr. Little drove the car over the concrete median into oncoming traffic and struck a pickup truck head on.  The truck flipped multiple times.  Emergency personnel transported the truck driver, Mr. Little, and the two children to the hospital.  The driver of the truck later died.  Mr. Little suffered a broken leg, broken pelvis, and broken ribs.

4. United States Park Police officers investigating the crash scene recovered a plastic bag containing a Newport cigarette pack on the ground directly outside and below Mr. Little's seat as driver of the car.  The officers report that it contained a one-ounce vial that was 1/3 full of PCP and two plastic bags that contained 10.5 grams of crack.  In addition, the vehicle contained numerous packs of Newport cigarettes and some purple latex gloves.

5. Eight days later, on October 19, 2016, the Park Police officers executed a search warrant at the residence where Mr. Little and Ms. Mack live.  Mr. Little was out of the hospital and present, but recumbent on a mattress on the floor in front of the living room couch; his injuries prevented him from rising.  During the search, the officers looked under the cushions of the couch and, from under the cushion nearest Mr. Little's head, retrieved a Taurus .45 caliber pistol, loaded with nine rounds and wrapped in a purple latex glove.  Mr. Little spontaneously said, "if it's a .45, it's mine."  Also located on the sofa was a plastic bag containing $504 in cash.

6. From various locations in the kitchen, the officers seized:

    a. Twenty-one (21) vials appearing to contain some amount of PCP, several empty glass vials, and numerous pink empty zip lock baggies;

    b. Crack in the amount of 6.4 grams, a 3-ounce vial that appeared to be PCP, more than 20 empty glass vials, and boxes of purple latex gloves;

    c. An extended magazine for a Glock .40 caliber pistol, 140 rounds of .40 caliber ammunition, a box of .45 caliber ammunition, .38 caliber ammunition, and mail matter in Mr. Little's name;

    d. Eighteen (18) empty glass vials, numerous unused pink zip lock bags, an eye dropper, latex gloves, and razor blades; and

    e. A Taurus .45 caliber magazine loaded with 10 rounds of ammunition.

7. Mr. Little waived his *Miranda*[1] rights and told the officers that he had purchased the Taurus .45 caliber gun approximately two-and-one-half weeks earlier for protection. He also stated that the vials in the kitchen were his but did not contain much PCP.

8. Mr. Little has eight prior convictions, four of which are narcotics offenses and one of which is a firearms offense. (He is also charged in U.S. District Court in Maryland for alleged crimes arising out of the search of his vehicle after the car crash.) Most recently, he was convicted on April 8, 2016 in case 2014-CF2-18508 for Possession of Liquid PCP, and was on probation at the time of the instant alleged offenses. Previously, he was convicted of Possession of Liquid PCP and Possession of Marijuana in case 2010-CF2-23032; these offenses were committed while he was on release for another matter. Mr. Little was also convicted of Attempted Possession with Intent to Distribute PCP in case 2010-CF2-14208. In 1997, he was convicted for carrying a firearm in case CA-970754J in Prince George's County.

9. Following the search, the Park Police completed a search return form, indicating what was found at the residence. The items identified in the search return were entered on a Park Police computer, which offered a drop-down box of items among which to select. That search return identifies all the PCP-related materials (vials, liquids, etc.) as "drug paraphernalia." Since the detention hearing before Judge Robinson, the officers conducting the search and entering the information have separately informed the Assistant United States Attorney, and she proffered, that this was an entry error and that the officers—members of the United States Park Police—identified the liquid substances as PCP, not paraphernalia, from its familiar odor. Park Police do not carry kits in their vehicles to field test for PCP.

      In addition to its proffered facts, as identified above, the Government argued that Mr. Little is a repeat drug offender, poses a significant risk of pre-trial recidivism, and stored his

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

3

gun, ammunition, and PCP in places within the residence which were readily accessible to his three-year-old child. The Government also argued that he remains a danger to the community and that his injuries from the crash (which appear to limit his mobility to a wheel chair) do not mean that he cannot sell drugs from his residence.

Mr. Little argued for release pending trial and offered three reasons to support a finding that he was not a danger to the community or a flight risk. First, Mr. Little argued that the seriousness of the offense was exaggerated because although the indictment charged 100 grams or more of PCP, the officers who recovered the items only categorized them as "drug paraphernalia," not actual drugs, which constitutes a lesser offense. Second, Mr. Little challenged the Government's belief that he was a flight risk or a danger by highlighting the amount of time that passed from the original accident and search warrant to the indictment and then from the indictment to his eventual arrest. Mr. Little argued that if the Government actually believed he was a danger to the community or flight risk, they wouldn't have waited 6 weeks after the indictment to arrest him. Finally, Mr. Little argued that the willingness of the Government to release Ms. Tiffany Mack, his co-defendant and girlfriend, who also lives in the home where the gun and PCP were found, should weigh in favor of his release as well.

The Court queried the parties about the Magistrate Judge's ruling; inasmuch as Judge Robinson did not order Mr. Little detained, she had no need to prepare a detention memorandum and the time between Friday, January 13, 2017 and Wednesday, January 18, 2017 had not allowed for the preparation of a transcript (Monday, January 16 was a federal holiday in recognition of Martin Luther King Jr.).

The Government explained that the Magistrate Judge had relied on Mr. Little's medical condition, as he recovers from his broken bones, and so ordered him to be confined to

his home.  Further, Judge Robinson doubted the presence and amount of PCP charged in the Indictment because there was no field test to confirm that the liquid was PCP and some vials were clear while others were not.  Defense counsel quoted the Magistrate Judge as finding "scant evidence" that it was PCP in Mr. Little's home because a photo of many of the vials showed a clear liquid in most while others had some hue.  The Magistrate Judge also credited defense counsel's arguments that Mr. Little arguably said there was "no PCP" in his kitchen, not that it was his; and that the seizing officer reported the vials as PCP paraphernalia and not the drug itself.  Further, the Magistrate Judge may have been persuaded by defense counsel's arguments (1) that the Government had agreed to the almost-immediate release of co-defendant Ms. Mack; (2) that it was unduly slow to indict Mr. Little and slow to arrest him, so it must not have considered him much of a threat to the community; and (3) that, despite the passage of time, there had been no test of the seized liquid by the Drug Enforcement Administration (DEA) to prove that it was PCP.

Before this Court, the Government proffered that both the seizing and arresting officers had separately explained that the choice of "paraphernalia" on their report was entered in error in usage of the computer program's drop-down box and that each of them clearly smelled PCP in the vials; that, unlike Mr. Little, co-defendant Mack has a prior history of only one Driving Under the Influence (DUI) conviction, which made her eligible for release; and that the timing of the Indictment and arrest are irrelevant to the question of detention.  The Government vigorously contested Defendant's attack on the charged quantity of PCP.  Neither lawyer contested the seizure of crack cocaine or related drug paraphernalia (small zip-lock bags, razor blade, plastic gloves, etc.).

## II.  LEGAL STANDARD

As stated above, Magistrate Judge Robinson ordered Mr. Little released at the end of his detention hearing.  Relying on 18 U.S.C. § 3145(a), the Government appealed to this Court to stay and review that order.  Section 3145(a) states:

> Review of a release order.—If a person is ordered released by a magistrate judge, . . .
>
> (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . . .
>
> The motion shall be determined promptly.

*Id.*  On such a motion, the court considers *de novo* the question of pre-trial detention, by taking evidence, recalling witnesses or reviewing transcripts, or proceeding through proffer and argument at its discretion.  *See Unites States v. Sheffield*, 799 F. Supp. 2d 18, 19-20 (D.D.C. 2011).  New arguments may also be raised by the parties.  The Court uses the tests and standards set forth in the Bail Reform Act, 18 U.S.C. § 3142, to determine whether a defendant should be released or detained pending trial.  The Bail Reform Act begins by presuming that release with some set of conditions will ensure a defendant's appearance at trial and protect the community.  However, in some situations the Court is required to presume that a defendant should be detained.  Section 3142(e)(3) states that

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed—
>
> (A) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46.

18 U.S.C. § 3142(e)(3).[2] The Court "may rely on a grand jury indictment to establish probable cause for the purposes of triggering the rebuttable presumption of section 3142(e)." *United States v. Williams*, 903 F.2d 844, 844 (D.C. Cir. 1990) (per curium) (unpublished); see also *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996).

Despite the presumption, the Court "must evaluate the weight of the evidence against each defendant seeking reconsideration of the detention orders and pretrial release to determine whether detention is proper." *United States v. Muschetta*, 118 F. Supp. 3d 340, 344 (D.D.C. 2015) (citing 18 U.S.C. § 3142(g)(2)). The Bail Reform Act instructs the Court to consider the following four factors when determining if detention is appropriate:

> (1) [t]he nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance;
>
> (2) the weight of evidence against the person;
>
> (3) the history and characteristics of the person, including . . . the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and . . .
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

### III. ANALYSIS

The Court ordered that Mr. Little be detained pending trial.

First, the Court was persuaded by its own knowledge of the attributes of PCP, including its smell, and the use in PCP street sales of one-half or ounce vials as were seized,

---

[2] Mr. Little was indicted by a Grand Jury on violations of the Controlled Substances Act which carry a maximum term of imprisonment of ten years or more.

many containing some amount of smelly liquid.  The Court finds no reason to challenge the proffer that the Park Police determined, based on the look and smell of the liquid in the vials, that they contained some amount of PCP.  The Court was also persuaded by the seizure of multiple packs of Newport cigarettes,[3] plastic gloves, other drug paraphernalia, and a gun from Mr. Little's residence.  In addition, the money in the residence, Mr. Little's three prior drug convictions involving PCP possession and/or possession with intent to distribute, and his status on probation and supervision at the time of this and prior crimes, lend probable cause to the immediate charges and his on-going danger to the community.

As a result of these findings, this Court was not persuaded that there was "scant evidence" of the presence of PCP in Mr. Little's residence as found by the Magistrate Judge.  Defense counsel's challenge to the charged amount of PCP is not convincing for the reasons articulated above.  While it is possible that tests by the DEA, now ordered, will confirm a lesser amount of PCP seized from Mr. Little's residence,[4] counsel's arguments are insufficient to challenge his detention because of the nature of the drug, its odor, how it is sold, the uncontested

---

[3] In the District of Columbia at least, PCP is most often sold by "fracking" a filtered cigarette (meaning to rub it between two hands to dislodge tobacco from the end that is normally lighted, making room for PCP); dipping the cigarette into a small ounce or half-ounce vial of PCP and then inhaling to draw the PCP through the cigarette; and selling the "dipper" for a per-cigarette price on the street.  Newport cigarettes, which contain menthol, are favored for this purpose.  *See United States v. Wilson*, 605 F.3d 985, 998 (D.C. Cir. 2010); *see also United States v. Castle*, 53 F. Supp. 95, 99 (D.D.C. 2014).

[4] The lack of DEA confirming tests that the liquid in all of the vials was PCP does not, on this record, undercut the officers' proffered statements that they smelled PCP in the liquid, the Grand Jury's finding of probable cause, or this Court's *de novo* finding that Mr. Little should be detained pending trial.

evidence seized, Mr. Little's statements, and his client's (very recent) criminal history.[5]  The Court found that the Grand Jury's decision to indict and the proffered evidence provided probable cause that Mr. Little committed the charged offense and, therefore, to justify release, Mr. Little must rebut the presumption that no set of conditions could reasonably assure his presence at trial or protect the public.

        The Court considered the nature and characteristics of the offense and found that because the offense involves the possession with intent to distribute large quantities of PCP, that factor weighed in favor of detention.  Additionally, after considering the proffer of evidence by the government, the Court found the weight of the evidence, that Mr. Little admitted that the gun found in the residence was his, and the amount of drugs and drug paraphernalia found in the residence, also weighed in favor of detention.  The history and characteristics of the Defendant also weighed in favor of detention.  Mr. Little has multiple prior convictions for narcotics convictions involving PCP and a prior conviction for a firearm offense.  Mr. Little also has a history of reoffending while on probation or supervised release for other offenses.  The Court, therefore, found that the first three factors weighed in favor of detention.

        Defense counsel's arguments focused on the final factor, the potential danger to the community should Mr. Little be released, and the risk of flight.  Counsel argued that the quick release of co-defendant Ms. Mack, who is charged with the same crimes, demonstrates that the government had no belief that Ms. Mack would flee and no basis to believe that Mr. Little, especially in his injured condition, would flee.  More critically, perhaps, defense counsel

---

[5] During the January 18, 2017 hearing, the Court asked defense counsel whether a judicial official is free to reject probable cause (or the findings of fact on which it was based) found by a Grand Jury when deciding whether to release or detain a defendant.  That issue is moot in light of the government's proffered facts and legal conclusions made here.

attacked the government's delay, between the October 11, 2016 head-on collision in Maryland and the December 7, 2016 return of an indictment in D.C.  Indeed, after obtaining the Indictment on December 7, the government delayed until January 11, 2017 to arrest the Defendant.  These delays, according to defense counsel, demonstrate that the government recognizes that Mr. Little is not a flight risk; that he did not leave his house after the search date of October 18, 2016 (except for court appearances) and is not a danger to the community; and that he can, therefore, be released to home confinement.

The Court concluded that Mr. Little's injuries supported a finding that he was not a risk of flight but does not diminish the potential danger to the community through continued dealing of PCP from his home.  The Court did not draw any conclusions from the delay in indicting or arresting Mr. Little.  The Government is permitted to make its own determinations on when to indict a defendant and without evidence of abuse or some facts to support that the delay was due to a lack of danger, the delay does not affect the detention analysis.  Similarly, the Court, without other facts or evidence, will not conclude that the time between Indictment and arrest demonstrates Mr. Little is not a danger to the community.

Mr. Little's access to PCP and crack is demonstrated by his criminal history and the drugs seized from his car and home.  Not only was a Taurus .45 caliber gun found under the couch cushion directly next to Mr. Little, but ammunition for that gun and numerous other guns was retrieved from his residence, indicating possible use of or access to other weapons.  The money seized during the search also supports a finding of drug dealing and community danger.  *See United States v. Cardoza*, 713 F.3d 656, 660 (D.C. Cir. 2013) (noting that evidence of large amounts of cash, drugs, and previous arrests establishes probable cause to believe the defendant was dealing drugs).  It is not improbable that lying on a mattress in his living room, gun at the

ready, Mr. Little could have been able to continue his drug business. Therefore, the Court found that even home detention—ordered by the Magistrate Judge—would present a serious risk to the safety of the community.

After considering the nature and circumstances of the offense, the weight of the evidence against Mr. Little, the history and characteristics of Mr. Little, and the nature and seriousness of the danger to the community if Mr. Little were released, the Court found that Mr. Little failed to rebut the presumption of detention and that Mr. Little's prior record of continuing crime while on probation or release also supported detention.

## IV.  CONCLUSION

For the reasons stated in open Court on January 18, 2017, and in the above opinion, the Court reversed the Magistrate Judge's decision to release Mr. Little, found him a danger to the community, and ordered him detained pending trial.


Date: January 30, 2017                                    /s/
                                                ROSEMARY M. COLLYER
                                                United States District Judge